UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Richard and Arretta Tyler, | No. 2:19-cv-00651-KJM-AC |
| Plaintiffs, | ORDER |
| v. | |
| Valley MRI and Radiology, Inc., et al., | |
| Defendants. | |

Arretta Tyler moves for summary judgment of her claims that defendants Valley MRI and Radiology and Sonoma Federal LLC discriminated against her on the basis of a disability. Key factual disputes remain unresolved, so **the motion is denied**.

**I.    BACKGROUND**

Ms. Tyler has undergone several back surgeries and has trouble standing and walking. Defs.' Resp. Stmt. Facts Nos. 1–2, ECF No. 24-1. In May 2018, she and her husband drove from their home in Woodbridge, California to Valley MRI and Radiology in Stockton, a medical facility. *Id.* No. 4. Valley MRI has two parking lots. *See* Pls.' Exs. at 123, ECF No. 20-4; Miyaki Decl. ¶ 4, ECF No. 24-3. One of the parking lots has designated, accessible parking spaces; the other does not. Miyaki Decl. ¶ 4 & Exs. B–F; Pls.' Exs. at 92–100, 124–25. The lot without accessible parking spaces is closer to Valley MRI's entrance. *See* Pls.' Exs. at 123;
/////

1

1    Defs.' Ex. F.  The defendants chose the further lot for their accessible spaces because the closer

2    lot has a 10 percent slope in some places.  *See* Miyaki Decl. ¶¶ 4, 8.

3          Ms. Tyler and her husband parked in the closer lot—the lot without accessible spaces—on

4    the day of their visit.  Defs.' Resp. Stmt. Facts No. 5.  Ms. Tyler then fell while she was stepping

5    up onto the curb, and she was injured.  *See, e.g.*, Tyler Dep. at 37, 48–49, ECF No. 20-4.  She

6    filed this lawsuit against Valley MRI and Sonoma Federal, LLC, which owns the property where

7    she fell, asserting claims under the Americans with Disabilities Act (ADA), the Rehabilitation

8    Act, the California Disabled Persons Act, the California Unruh Civil Rights Act, the California

9    Health and Safety Code, and California common law.  *See generally* First Am. Compl., ECF No.

10   12.

11         Ms. Tyler now moves for summary judgment on her claims under the ADA, the Disabled

12   Persons Act, and the Unruh Act.  *See generally* Mot., ECF No. 20; Mem., ECF No. 20-1.  The

13   defendants oppose the motion, Opp'n, ECF No. 24, which is now fully briefed, *see* Reply, ECF

14   No. 39; Surreply, ECF No. 46; *see also* Order (June 8, 2021), ECF No. 45 (permitting defendants

15   to file surreply to address arguments and evidence raised for first time in reply).  The court

16   submitted the matter for decision without a hearing.  Min. Order, ECF No. 43.

17   **II.    LEGAL STANDARD**

18         A court may grant summary judgment "if . . . there is no genuine dispute as to any

19   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

20   The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

21   resolved only by a finder of fact because they may reasonably be resolved in favor of either

22   party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

23         The moving party bears the initial burden of showing the district court "that there is an

24   absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S.

25   317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish that there

26   is a genuine issue of material fact . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

27   475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular parts

28   of materials in the record . . . or show[] that the materials cited do not establish the absence or

1  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to
2  support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The
3  nonmoving party] must do more than simply show that there is some metaphysical doubt as to the
4  material facts."). The court draws all inferences and views all evidence in the light most
5  favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. "Where the record taken as a
6  whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine
7  issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253,
8  289 (1968)).

## III.   ANALYSIS

The ADA prohibits discrimination in places of public accommodation. 42 U.S.C. § 12182(a). To prevail on a discrimination claim based on that prohibition, Ms. Tyler must prove (1) she is "disabled" under the ADA; (2) the defendants are private entities that own, lease, or operate a place of public accommodation; and (3) the defendants denied accommodations to her because of her disability. *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1033 (9th Cir. 2020). For purposes of this motion, the defendants do not dispute that Ms. Tyler could establish the first two elements of her ADA claim. The defendants contend only that she cannot satisfy the third element, i.e., proof that they denied accommodations to her because of her disability. *See* Opp'n at 3. A few more details about the parties' positions are necessary to understand this dispute.

The defendants argue they accommodated Ms. Tyler by offering designated accessible parking spaces in one of their parking lots. *See* Opp'n at 4. They acknowledge that some spaces are closer to Valley MRI's entrance than the spaces they have designated, but they argue the ADA does not demand that accessible parking spaces be the closest possible spaces. *See id.* at 4–5. Instead, the defendants contend, the ADA requires only that accessible spaces be offered along the shortest "accessible" route. *See id.* The closer parking lot, they argue, is not "accessible" because it is sloped too steeply. *See id.* Ms. Tyler disagrees. By her reasoning, the defendants discriminated against her because they did not reduce the 10 percent grade of the closer parking lot. *See* Reply at 3. She cites regulations and commentary by the Department of Justice, which

3

1  provide among other things that accessible parking spaces must be on the "shortest accessible
2  route of travel to an accessible facility entrance" and must be "closest to the accessible entrance."
3  Mot. at 5 nn. 15, 16 (citing U.S. Dep't of Justice, "ADA Business Brief: Restriping Parking Lots"
4  at 2 (Oct. 2001) and U.S. Dep't of Justice, "ADA Guide for Small Businesses" at 4 (Oct. 8,
5  2008)).

6　　　In response, the defendants argue the ADA does not require them to regrade the closer
7  parking lot because it would be prohibitively expensive to do so. *See* Opp'n at 5–6. The ADA
8  does not require "architectural barriers," such as steeply sloped parking lots, *see Lopez*, 974 F.3d
9  at 1034, to be removed from a facility that existed when the ADA was passed if it is not "readily
10 achievable" to accomplish the removal, *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945
11 (9th Cir. 2011) (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)). Ms. Tyler argues these provisions are
12 irrelevant. She claims Valley MRI did not exist at the time the ADA was passed, citing a 1995
13 building permit, which noted a "demolition" and the construction of a new "shell" building. *See*
14 Reply at 2 & Exs. at 18–19. If the Valley MRI facility was in fact a new construction, a more
15 stringent standard than "readily achievable" would apply. *See* Reply at 3. Under the regulations
16 promulgated by the Attorney General, all barriers must be removed from newly constructed
17 facilities unless it is "structurally impracticable to do so." 28 C.F.R. § 36401(c). Hilly terrain
18 and steep grades do not make for a structural impracticability under these regulations. *See*
19 28 C.F.R. Part 36, App'x B at 649. Federal courts have often relied on this guidance. *See, e.g.*,
20 *Caruso v. Blockbuster-Sony Music Entm't Ctr. at Waterfront*, 193 F.3d 730, 738 (3d Cir. 1999)
21 (Alito, J.); *Coppi v. City of Dana Point*, No. 11-01813, 2013 WL 12131354, at *10 (C.D. Cal.
22 Apr. 10, 2013).

23　　　Resolving Ms. Tyler's motion thus requires the court to answer two questions: Could a
24 reasonable fact-finder conclude that Valley MRI was constructed before the ADA was passed?
25 And if so, has she shown that flattening the parking lot is a "readily achievable" endeavor?

26　　　On the first question, the defendants offer the declaration of the property owner,
27 Dr. Aubrey Federal, who would testify at trial that Valley MRI was constructed long before 1992.
28 *See* Federal Decl., ECF No. 46-1. According to Dr. Federal, Ms. Tyler has misinterpreted the

4

permits she cites in her reply. In 1995, Valley MRI removed a portion of the roof to lower a new MRI machine into the building with a crane and then construct a "shell" room around the MRI within the existing building. *See id.* ¶ 3. No buildings were demolished. *See id.* A fact-finder could rely on this testimony to decide that Valley MRI existed when the ADA was passed.

On the second question, Ms. Tyler bears the "initial burden" of "plausibly showing that the cost of removing an architectural barrier does not exceed the benefits under the particular circumstances." *Lopez*, 974 F.3d at 1035 (emphasis omitted). If she carries that burden, the defendants may respond by "establishing that the costs of a plaintiff's proposal would in fact exceed the benefits." *Id.* (quoting *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 373 (2d Cir. 2008)). This court would then weigh the factors listed in 42 U.S.C. § 12181(9) "to determine whether removal of the architectural barrier is readily achievable or not." *Id.* at 1039. Section 12181(9) lists many factors in four categories:

> (A) the nature and cost of the action needed . . . ;
>
> (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
>
> (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
>
> (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9)(A)–(D).

For purposes of summary judgment, Ms. Tyler has not carried her initial burden of showing the costs of flattening the parking lot do not exceed the benefits. She does not cite or discuss the factors listed above. Nor does she cite cost estimates or describe what work must be done to ensure both parking lots at Valley MRI are accessible. The court is not required to comb the record for this evidence on her behalf. *See United States v. Kitsap Physicians Serv.*, 314 F.3d

995, 999 (9th Cir. 2002). She is not entitled to summary judgment of her ADA claim. *See Lopez*, 974 F.3d at 1039 (affirming denial of summary judgment to plaintiff who "not only failed to address the § 12818(9) factors, but . . . also did not meet his initial burden of plausibly showing how the cost of [removing the architectural barrier] does not exceed the benefits").

Ms. Tyler does not advance independent arguments in support of her other claims. *See* Mem. at 7 (arguing Ms. Tyler is entitled to summary judgment of her claims under California Disabled Persons and Unruh Acts if she proves ADA violation). Her motion for summary judgment of these claims is denied as well.

### IV.  CONCLUSION

The motion for summary judgment at ECF No. 20 is **denied**.

A final pretrial conference is set for **July 29, 2022, at 10:00 a.m. before the undersigned**.[1] At least one of the attorneys who will conduct the trial for each of the parties shall attend the Final Pretrial Conference. If by reason of illness or other unavoidable circumstance a trial attorney is unable to attend, the attorney who attends in place of the trial attorney shall have equal familiarity with the case and equal authorization to make commitments on behalf of the client.

Counsel for all parties are to be fully prepared for trial at the time of the Final Pretrial Conference, with no matters remaining to be accomplished except production of witnesses for oral testimony. **The parties shall confer and file a joint pretrial conference statement by July 8, 2022. Concurrently with the filing of the Joint Final Pretrial Conference Statement, counsel shall submit to chambers the word processable version of the Statement, in its entirety (including the witness and exhibit lists) to: kjmorders@caed.uscourts.gov**. The provisions of Local Rule 281 shall apply with respect to the matters to be included in the joint pretrial statement. In addition to those subjects listed in Local Rule 281(b), the parties are to provide the court with the following:

/////

---

[1] The court calendar for this date will indicate whether the hearing will be held by videoconference or in the courtroom.

1. A plain, concise statement that identifies every non-discovery motion previously tendered to the court and its resolution.

2. A concise, joint list of undisputed core facts that are relevant to each claim. Disputed core facts should then be identified in the same manner. The parties are reminded not to identify every fact in dispute but only those disputed facts that are essential to the formulation of each claim. Each disputed fact and undisputed fact should be separately numbered or lettered. Where the parties are unable to agree on the core disputed facts, they should nevertheless list core disputed facts in the above manner.

3. Concise lists of disputed evidentiary issues that will be the subject of a party's motion *in limine*, and whether the parties believe resolution of any of these motions will be necessary before the first day of trial.

4. Each party's points of law, which concisely describe the legal basis or theory underlying their claims and defenses. Points of law should reflect issues derived from the core undisputed and disputed facts. The parties shall not include argument with any point of law; the parties may include concise arguments in their trial briefs.

5. A joint statement of the case in plain concise language, which will be read to the jury during voir dire and at the beginning of the trial. The purpose of the joint statement is to inform the jury what the case is about.

6. The parties' position on the number of jurors to be impaneled to try the case.

7. The parties' report on settlement discussions to date and other information related to settlement that will allow the court to schedule a final pretrial settlement conference.

8. The parties' positions on whether they will consent to a magistrate judge trying the case, given the significant backlog of criminal cases pending before the district court.

/////

Discovery documents to be listed in the pretrial statement shall not include documents to be used only for impeachment and in rebuttal.

The parties are reminded that pursuant to Local Rule 281 they are required to attach to the Final Pretrial Conference Statement an exhibit listing witnesses and exhibits they propose to offer at trial.  After the name of each witness, each party shall provide a brief statement of the nature of the testimony to be proffered.  The parties may file a joint list or each party may file separate lists.  These list(s) shall not be contained in the body of the Final Pretrial Conference Statement itself, but shall be attached as separate documents to be used as addenda to the Final Pretrial Order.

Plaintiff's exhibits shall be listed numerically.  Defendant's exhibits shall be listed alphabetically.  In the event that the alphabet is exhausted, the exhibits shall be marked AA, AB, AC, . . . AZ, then BA, BB, BC, . . . BZ, and so on through ZZ, as necessary.  The parties shall use the standard exhibit stickers provided by the court: pink for plaintiff and blue for defendant.  All multi-page exhibits shall be stapled or otherwise fastened together and each page within the exhibit shall be numbered.  The list of exhibits shall not include excerpts of depositions to be used only for impeachment.  In the event that plaintiff(s) and defendant(s) offer the same exhibit during trial, that exhibit shall be referred to by the designation the exhibit is first identified.  The court cautions the parties to pay attention to this detail so that all concerned, including the jury, will not be confused by one exhibit being identified with both a number and a letter.  The parties are encouraged to consult concerning exhibits and, to the extent possible, provide joint exhibits, which shall be designated as JX and listed numerically, e.g., JX-1, JX-2.  **Counsel shall produce all trial exhibits to Casey Schultz, the Courtroom Deputy, no later than 3:00 p.m. on the Friday before trial.**

The Final Pretrial Order will contain a stringent standard for the offering at trial of witnesses and exhibits not listed in the Final Pretrial Order, and the parties are cautioned that the standard will be strictly applied.  On the other hand, the listing of exhibits or witnesses that a party does not intend to offer will be viewed as an abuse of the court's processes.

Failure to comply with Local Rule 281, as modified by this order, may be grounds for sanctions.

8

The parties also are reminded that pursuant to Rule 16 of the Federal Rules of Civil Procedure it will be their duty at the Final Pretrial Conference to aid the court in: (a) the formulation and simplification of issues and the elimination of frivolous claims or defenses; (b) the settling of facts that should properly be admitted; and (c) the avoidance of unnecessary proof and cumulative evidence. Counsel must cooperatively prepare the joint Final Pretrial Conference Statement and participate in good faith at the Final Pretrial Conference with these aims in mind.[2] A failure to do so may result in the imposition of sanctions which may include monetary sanctions, orders precluding proof, elimination of claims or defenses, or such other sanctions as the court deems appropriate.

This order resolves ECF No. 20.

IT IS SO ORDERED.

DATED: June 7, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] "If the pretrial conference discloses that no material facts are in dispute and that the undisputed facts entitle one of the parties to judgment as a matter of law," the court may summarily dispose of the case or claims. *Portsmouth Square v. Shareholders Protective Comm.*, 770 F.2d 866, 868-69 (9th Cir. 1985).